The next case is number 097014, Evans against the Department of Veterans Affairs. Mr. Raczynski. Thank you your honor. May it please the court. Douglas Raczynski for appellant veteran Jerome Evans. In 2006 veteran Nicholas Roboto filed a petition in the veterans court for arithmandamus for an order to the secretary to rescind a policy that the secretary, that Mr. Roboto claimed violated his rights by instituting a process that was not allowed under the veterans system. But this is Mr. Evans before us right? Yes your honor. The point being that in 2008 Mr. Evans filed a similar writ for a similar relief from the court. In the Roboto case the court found and held specifically on the issue of appropriate or alternate adequate remedy that because the secretary through the board chairman had issued the policy that was in dispute that it would be frivolous, I'm sorry, it would be futile for Mr. Roboto to attempt to appeal it to the secretary or the board chairman. In Mr. Evans case the court said just the opposite. That he was to appeal his point of law which are on the process and his constitutional issues to the board. I believe and we have submitted that this was an incorrect ruling by the veterans court in that it was against all their own case law. Mr. Rosetsky we have a decision from the veterans court finding that mandamus was inappropriate because there's an alternative route of review that standard mandamus denial language. The alternative route being to go to the board and then amend to this court on the merits. Yes your honor. Effective date. So why wasn't the veterans court decision correct? The veterans court decision was not correct for a number of reasons. First of all Mr. Evans was not seeking a new effective date. His petition to the court was that the process upon which that decision was reached violated the statutes and his constitutional rights because the decision was made by the CMP director under the fast letter process. The issue with the veterans court decision is that it assumed that there was an avenue to the board. Why couldn't you have appealed to the board? Exactly those arguments saying that not only am I appealing the effective date I'm also appealing the process by which my rights were set. For several reasons your honor. At our point we read the fast letter which was very difficult to obtain. It's a secretive process. In it it explicitly says that the veteran and his counsel is to be kept in the dark about the process. At that point that's all we knew. We serendipitously came into possession of the documents that actually. Do you know anything about when the RO makes a decision how they make that decision? Yes your honor. Well but I mean how do you get any information about what the RO is doing? We reviewed the file. We get their claims file. In the process. And if you had appealed to the board you'd have the same file right? Yes your honor but. You'd have all the information that you'd need to make all your arguments. No your honor we would not. If you will read page 3 of the current version of the fast letter which would be in effect on an appeal which we have filed. We have filed an appeal with the regional office to the board. There's a waiting processing at the regional office. It explicitly states on page 3 which is appendix 49 that all records related to the C&P review are to be removed from the claims file. The board will never get to review the decision of the C&P director. That was implicit in the previous fast letter. Well but what are they reviewing? They're reviewing the decision that's going up aren't they? If the C&P director has made some kind of a decision that will be reviewed right? No your honor. Not under the terms of the fast letter and the way it has actually been applied to Mr. Evans. Mr. Evans got a decision, got facts from maybe the history of Mr. Evans claim here is. Yeah exactly it's a good one. The C&P director cuts back what the R.O. would have done. When you appeal to the board what you're going to appeal? You're going to appeal the final decision which would have been that of the C&P director right? That's the only thing you could appeal. That's the decision you've received as to your benefits. Going back a little bit further in the history of this case which is shown in the docket. Answer my question. What else would you appeal other than what the decision has been? We will not be able to appeal the decision of the C&P director because it is obscured by the language that the regional office back fits against their own original decision. They awarded this guy and in this particular case. You're going to be able to appeal the decision of the office right? Now I'm not sure why you have an interest in telling the office how it makes its decisions. That's another question. I mean they make their decision and then you have a chance to appeal it right? The issue here is the futility of the veterans court's decision to go back through the board. The board in this case has already ruled on this specific issue. On the remand from the veterans court in 2007 the very basis for the decision which is not before the court because it was just issued in May. For the return going back to the board is that a September 2004 medical report says that Mr. Evans does not have service related neuropathy. That is the very decision the secretary conceded the board had erred in finding support of their initial denial of Mr. Evans. So what we're having here on the facts in this case is that the board secretary conceded the fact was an error. We're going back to the board which remanded to the regional office which agreed it had made an error and we were going back to get paid when the C&P director also working for a secretary said no we want to go back to what we had back in 2004. Mr. Rosinsky I'd like to ask you about section 502 of the 38 U.S.C. Is that relevant here? That provides that an action of the secretary to which section 552 refers, this is rulemaking, shall be reviewed only by the federal circuit. Yes your honor and we are not asking for review on the merits of this FAST letter that was applied to Mr. Evans which is no longer in effect. So the FAST letter doesn't come under 552? The FAST letter was not issued per rulemaking procedures. It was an issuance directly from the secretary's authorization to the C&P director. So to be sure I understand the issue that you want to raise. You're not objecting to the events that when a certain threshold is passed it does go through the C&P process. You're objecting to the fact that the veteran doesn't know what's happening or may know because the veteran would know that the threshold has been exceeded but doesn't have the opportunity to participate in the further review. Is that the crux of the problem? Your honor, Mr. Evans' position and issue before this court is much simpler than that I believe. It's whether the veterans court made the right decision and call regarding the futility of going back to the board. All the issues you raised are the issues we wanted to raise with the veterans court. The secretive nature of this, we don't know what criteria they're applying. The records are removed. Whether this whole process is constitutional, whether it is in accordance with the other statutes, those are the issues we raised. Not whether he was deserving of $51,000 or $5,000. But you raise a good issue here. The secretary calls this a quality assurance program. A quality assurance program, in my experience of 30 years plus in the nuclear industry where we have a bit of quality assurance, does not dictate results. It identifies issues to the line and the line decides. If there's some communication here, perhaps it would have considered some of the issues that we're raising and want to raise to the court. But the issue before this court is simply, did the veterans court interpret the All Writs Act and its own case law appropriate to whether it was futile to go to the board? And there are several reasons besides the ones that we briefed that it is futile to go to the board. And I would suggest that, as Judge Lori may remember, in Majit, there was a process where the veterans court was a little bit too rigorous with its exhaustion remedies. They apply here the same. They have from Erskine Palmer on through to Roboto. It has been well established, according to the court, that to appeal policies to the secretary is futile. Here they didn't. Similar in Majit where they said if there's some basis for considering whether there would be adequate relief, the court at least is required to explain it, not just assume it. The veterans system requires that type of consideration here. There's supposed to be a balancing of the veterans' rights against the possible infringement on the agency's rights. I think if the fast letter procedure lowers his entitlement, isn't that going to be explained to him with reasons, wasn't it? We haven't seen it. In the April decision, it again points back to the same reason that was already admitted to the secretary, not to be corrected. There's no mention of any other review other than the regional office doing its normal review. And that, again, we're going to go to the board. And at best, the board, if indeed it has jurisdiction... Maybe his case wasn't final if he didn't get an evaluation based on the fast letter procedure. Well, we do have all that documentation in the record that what occurred. And when it was issued, was it the day after? Why can't you take that all to the board and make every single argument you want to make? Because we have no... It is a futile event to go with... When it says the board cannot vary off of the instructions of the secretary. And this is the instruction of the secretary. Well, the instructions concerning procedure, but not instructions on the merits of the case. That's within the board's purview. I think that is an issue that we would like to raise to the veterans' court on the merits. All these questions you're raising, as the secretary raised in his brief, are on the merits. Well, I assume you know that these issues were raised in a separate case on the committee of this court. On the rulemaking issues, yes, it is. But the new... Those issues, the resolution of those issues would not help Mr. Evans because the new procedure is in place now, and they're arguing mutinous in both cases. The procedure, the process applied to Mr. Evans was applied last year. It can't be undone by any rulemaking finding on the current process. He suffered whatever he suffered under the old process, which they admitted and conceded by changing the process. If you read, the word draft and the word pre-decisional does not appear once in the fast letter 719 that was applied to Mr. Evans. There are over 20 references to draft and another half a dozen or so of pre-decisional in the current process. They have admitted the errors that were raised by Mr. Evans and previously to Mr. Stratford, which were essentially parallel cases. Isn't it also true that the board is no longer bound by the secretary as per 38 CFR 19.5? No, Your Honor. That has made it very clear that the board has full purview to make whatever judgments it needs to make, right? I do not see 19.5 as being clear on this point. And I would raise the issue of Gardner interpretation of the statute. 19.5 explicitly lists that they do not have to follow manuals and circulars and other administrative issues, which probably should be issuances. In other words, they don't have to follow the procedures that you say they have to follow. If that is not in compliance with the statute, then we need to go to the statute which says instructions, which the word itself appears in 0719. It says this instruction shall be followed in this court. So you're arguing, you'd like to argue for a position which hurts the veteran's ability to bring issues to the board. You want to bind the board's hands and make it harder for the board to reach all the issues that it would like to reach in behalf of the veteran. What Mr. Evans is asking for is that his case be properly adjudicated. Which it can be at the board. And the regulation I just cited to you says that every issue is open to the board. And you want to say, no, we don't want that. We'd rather make it harder and hurt the veteran because we want to make some legal point. I respectfully disagree. And I would also add that by placing special reviews on people based on what their dutifully award is, that is hurting veterans. Mr. Evans has been fighting 17 years for this. So he gets additional review. And by admission, about 25% of these special reviews result in taking away all the money from the veterans. I would argue that is what Mr. Evans is trying in a broader sense to prevent, which would help veterans. Veterans are being penalized by both of these issuances for fighting until they show that there have been errors. All right. Let's hear from the other side. And we'll save you some time. Thank you. Ms. Hogan. Thank you, Your Honor. May it please the Court. The Veterans Court properly denied the writ of mandamus, the petition for the writ of mandamus. Do you agree that the Board is not bound to require the instructions on this review from the Secretary? I agree, and for several reasons. First, simply by the plain language of the instruction itself, it only applies to what the RO does. There is no application of Fast Letter 0719 or 0824 to what the Board does. As we explained in our brief, the Board has full de novo review to look again at what Mr. Evans' effective date should be, and it is not required to submit that proposed Board decision to the Compensation and Pension Service for review. So your position is that if the CMP, well, this case is a good example, says, no, the effective date of this award will be such and such, and not the date awarded by the RO initially. The RO is not bound by that, but can say, never mind, we like what we said better than what you're saying? No, what I'm saying here is that the Board. That was my question for you. Right, but the RO, and what happened to the RO? Are you saying the RO is not bound by what the CMP says? The RO is bound to follow the laws and regulations. Is the RO bound to follow the CMP view as to the effective date? Yes, as here, what happened was the CMP reviewers... You say that the RO is bound and cannot say, I have the final word, I, or the Board. Is the Board bound by the CMP? I'm sorry? You're saying that the... The RO, the particular RO reviewer is bound in the same way that if its supervisor says, this is what you've got to do, you need to do this, and it's the decision... You say they are bound to follow what the CMP review says, not what they think. If they disagree with the CMP service, they're, of course, free to go back to the CMP service and say, I think you've overlooked this piece of evidence, or we have a new piece of evidence that changes the story. But they're not required to tell the veteran that this is going on, right? Just as they would not be required to let the veteran know that their supervisor has a different point of view on the issue. That's the question, isn't it? Were the veterans authorized to participate throughout with a presumably veteran-friendly statute by law? A veteran is not entitled to be a decision-maker. But the whole thing goes to the board, right? Absolutely. And the board can look at what the CMP director did and what the RO did and review the whole decision. Procedurally, substantively, and in every way, right? Yes. The board can say... Well, that's different from what you told me. This is a thing that I really want to have straight. I heard the confusion. She answered your question on the RO, and I think we're referring to the board. The board can do everything. The RO, of course, is bound by the supervisor. I want to understand if the CMP says, no, the effective date is such and such, not the 15 years earlier. The board is authorized to ignore that? Absolutely. Because the board has, by statute, full de novo review to review all of the evidence in the file and say... The board is empowered to say, you're right, the CMP reviewer was incorrect, and the proper effective date should be 15 years earlier. And then the VA would be bound to that decision. And that's precisely why there is an adequate alternate avenue of relief here, and it's the avenue of relief that Mr. Evans is pursuing right now. So there's no question of futility. But even to step back and let's say this was something more clear, like a regulation that the board would undoubtedly be required to follow. Simply because that would be futile does not entitle anyone to a writ of mandamus. It is very often the case... The regulation it provides for CMP review, does that explicitly say the board is not bound by the CMP review? If you look, let's see. There is nothing in the... Actually, yes, hold on. Well, actually, I take that back. I'm not sure it specifically states that. But if you look at what the FAFSA letter talks about, it talks about pre... No, I want to talk about the regulation. Well, there is no... I really want to understand, because this seems to be the crux of the case, does the regulation which authorizes and requires the CMP review state, nonetheless, the board doesn't have to follow it? To be clear, there's no regulation here. What we're talking about is the FAFSA letter, which is an internal guideline, a letter that binds the RO. The CMP service is the arm of the Veterans Benefits Administration, which provides policy and guidance to the regional offices. You're saying because it's a FAFSA letter and not a regulation, the board can ignore it, but they are required to submit information for CMP review, are they not? The board is not. The RO is required. The RO is, if the particular criteria are met. But the CMP service is no say or no hold over what the board does. The board, by statute, is empowered to review every case on the merits and on de novo review, and if it says that you've overlooked this fact or we need more evidence, it's free to send it back to the RO, but it's empowered to make a decision on the effective date without going to the CMP service and without going back to the RO. And what is the justification for withholding from the Veteran the information that the RO issued a certain decision that was overturned by CMP? To be very clear, there is only one decision, and that's the final rating decision which gets issued and which notice is sent to the Veteran. Anything prior to that is pre-promulgation. It may be a draft decision. It may be a tentative decision. But the Veteran is not entitled to be part of what is essentially the deliberative process of the VA. There may be several different employees. So if the CMP process tells the RO to change the effective date, to lessen the benefit, the Veteran will know what the RO now says and decides based on the CMP process. So the Veteran will be informed of the RO's new decision following the CMP process and can properly appeal with full knowledge. There's only one decision that gets rendered. That's the decision for which the Veteran receives notice. That's the decision that triggers the appeal rights for the Veteran and which provides the Board its jurisdictional basis to look at the decision de novo. So the April 2008 RO decision here, which gave an effective date of 2007, was the jurisdictional hook that Mr. Evans needed to go to the Board and either argue that the effective date should have been an earlier date or that the procedures that the RO used to reach that decision were improper or unconstitutional or contrary to statute of regulations. It relates to an alternative route of review, which supports the denial of mandamus by the Court. Yes. And so when the CMP decides that they're going to change the result or that they're looking at it, there's no participation by the Veteran in terms of additional information that might be provided, in terms of new issues that might have crossed the desk somehow at CMP because of their broad scope of review. The CMP service might say, in order to get a 30% rating for this particular disability, you need to have evidence of five things, and you only have evidence for the RO, so a 30% rating is not appropriate here. The RO can then go back and tell the Veteran, we still need evidence on this fifth piece of information, so we're going to do additional fact-finding, we're going to get a medical examination. There's no necessary reason why this needs to always be adverse to the Veteran. In this particular case, what the CMP service said was, by regulation, the effective date can only be the later of two dates, and 2007 was the first date that there was a medical diagnosis of neuropathy. That is the correct date by the regulation, so you've made an error in your proposed decision. Now, that may be correct or that may be incorrect, but that is an issue that the Board is well-equipped to decide, and Mr. Evans may have his claim completely vindicated by the Board without ever referencing the fast letter procedures. Now, you're familiar with the case that was argued here a couple of months ago? I argued it, Your Honor. You argued it. This case is different because it's mandamus? I think this case is a lot simpler because it is an issue of mandamus. I mean, to the extent that there is a debate or a dispute about what the fast letter procedures are or whether it was a pre-final decision that was reviewed or a final decision reviewed, all of that goes to the issue of whether Mr. Evans had a clear and undisputable right to the writ. To the extent that there is a hearty debate about whether that fast letter is valid or not, that certainly goes to the Veterans Court's correctness in declining to exercise its discretion to do this and to let these different issues be adjudicated first by the Board and by the Veterans Court and certainly the 502 review that this Court can review, and all of those things will take its course, and Mr. Evans' rights here can be vindicated wholly by the consideration of all of those normal avenues of relief. Do you think 502 is relevant here? Counsel, Mr. Rosinsky said 502 isn't relevant here because the fast letter is not an action of the Secretary to which Section 552 refers. Do you agree with that? Well, certainly this Court can decide that the fast letter was something that needed to have notice and comment and could remand it back to the Veterans Court. This Court could say it's simply an internal procedure to which no notice and comment is required. So the fact that there has been a 502 review sought in this Court But it wasn't sought in this Court. It was sought in the Veterans Court. The case is in this Court on appeal from the Veterans Court. So if the fast letter action is a 502 action, the case was brought in the wrong Court. It should have been brought here directly. This case right here. Yes. And it's still the case that So that helps you anyway. It helps us anyway, Your Honor, for an additional reason that, of course, even if the Board can't consider the fast letter under 7261, the Veterans Court is empowered to set aside actions in the Secretary which the Veterans Court finds to be outside of statutory authority or unconstitutional. So there's numerous avenues for Mr. Evans to pursue these two claims. And so we would respectfully request that the Court affirm the Veterans Court's denial of the petition for writ. Thank you, Ms. Hogan. Mr. Rezinski. Yes, Your Honor. I'd like to read a portion, again, on page 849 of the appendix, claims involving the BVA or CVAC decisions. It talks about draft rating decisions from the Board, review only when the Board signs effective date and or the retroactive increase valuation. Otherwise, and this is the important part, when processing decisions by the Board or the Court, follow the procedures outlined in this fast letter. The Board can say here that we agree. We want you to do what we told you to do three years ago, four years ago, whenever we get to the Board and go back. They will go back and apply the fast letter again. And they can say, no, we don't agree with it. The issue is Mr. Evans petitioned the Court not just to undo this to him, but to get the fast letter rescinded and to look at the constitutional issues. The Board can't do that, either because it is an instruction and... What are the constitutional issues? If they, if this is a potential taking, we have asserted that he was awarded the money and they took it back. He wasn't awarded the money. We've got a signed letter that says here's your money. Potentially, there's a dispute. But until that is a final decision in your hands, it's not, it wasn't the decision of the RO, was it? I had that in my hand. But the RO did not give you that as your final decision. The RO gave me that. That's how I got it. I had it before the April 15th letter came to me. I think there's some legal issues about whether the date on that letter or the date on this letter applies here. These are the merits that we wanted to raise to the Court because we are going to be stuck in this with the Board. The Board will find that we already ruled on this. We go back to the RO. They apply these special procedures to people who have been fighting for their benefits for the longest, and I would submit that that in itself, there is something substantive here. Mr. Evans had some money, whether it was final or not. Now he doesn't. We're saying that that's just an administrative review. What do you mean he had the money? My impression is that the RO's first decision was sidetracked to the fast-track procedure by the internal procedures of the VA. Without this procedure, without this document that we've challenged or its subsequent version, Mr. Evans would have had his check. There is no other review. He's been through the three reviews that are in the regulations and the normal processes. That's why I was asking. It seems to me it's hard to say that there should not be an extra layer of internal review over a certain minimum threshold. Your Honor. I was trying to focus on whether your concern is that that occurred at all or that it occurred without the veteran's knowledge and participation. That it occurred without his knowledge even afterwards, other than my serendipitous showing up the day they were going to send out the letter or the day before if you trust the date on the letter. Secondly, that they are targeting, I think there's constitutional issues related with this, the people who have the most money. It is specifically targeted. They're not targeting quality. Are we making the right decisions? They're targeting where can we get the most money back. There's reason on both sides. And that's what I would just conclude with, that the healthy debate we're talking about in Majid, that says that is a basis for not enforcing exhaustion, that that is why the court should handle this, other than on the side of Mr. Evans. They can turn this down, but they need to explain why Mr. Evans doesn't get the same treatment as Mrs. Earth Palmer and Mr. Roboto. That is what we're here to ask this court. Thank you. Thank you, Mr. Rosenstein, Ms. Hogan. Please just take an entry submission.